UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rashid Minhas,

    Petitioner,

v.

Warden B. Birkholz,
*Federal Prison Camp-Duluth*,

    Respondent.

Case No. 20-cv-0061 (JRT/DTS)

**REPORT AND RECOMMENDATION**

---

Petitioner Rashid Minhas brings this habeas petition under 28 U.S.C. § 2241 seeking restoration of good conduct time that he lost as a disciplinary sanction for possessing a cell phone at the Federal Prison Camp in Duluth, Minnesota (FPC-Duluth). Minhas contends the sanctions were unconstitutionally severe and excessive due to discrimination because he is Asian and that the discipline process failed as a matter of law because he did not have time to appeal. For the reasons stated below, the Court recommends his petition be denied.

**FINDINGS OF FACT**

Minhas is serving an aggregated 114-month term of imprisonment followed by three years of supervision for Wire Fraud and Mail Fraud in violation of 18 U.S.C. §§ 1341, 1343. Bush Decl. ¶ 3 & Ex. A, Docket Nos. 6, 6-1. His projected release date is September 21, 2023, via a good conduct time release. *Id.*

**I.    BOP Program Statement 5270.09 Inmate Discipline Program**

BOP Program Statement 5270.09 makes possession of a "portable telephone, pager, or other electronic device" a "Greatest Severity Level Prohibited Act." 28 C.F.R.

§ 541.3, Table 1 at 108[1]; Wilson Decl. Ex. A, Docket No. 5-1 at 44. Inmates charged with offenses in this category are referred for disciplinary action, which may result in one or more of several disciplinary sanctions:

Available Sanctions for Greatest Severity Level Prohibited Acts

A.   Recommend parole date rescission or retardation.
B.   Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.   Disciplinary segregation (up to 12 months).
D.   Make monetary restitution.
E.   Monetary fine.
F.   Loss of privileges (*e.g.*, visiting, telephone, commissary, movies, recreation).
G.   Change housing (quarters).
H.   Remove from program and/or group activity.
I.   Loss of job.
J.   Impound inmate's personal property.
K.   Confiscate contraband.
L.   Restrict to quarters.
M.   Extra duty.

28 C.F.R. § 541.3, Table 1; Program Statement 5270.09, Docket No. 5-1 at 45-46.

## II.   BOP Disciplinary Process

The BOP's disciplinary process is as follows. First, a staff member prepares an incident report with factual support for an alleged violation of the disciplinary code and forwards the incident report for investigation. Wilson Decl. ¶ 3, Docket No. 5. The

---

[1] A Code 108 violation is for "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)."

investigating officer then provides a copy of the incident report to the inmate, ordinarily within 24 hours of the incident report. *Id*. After completing the investigation, the investigating officer forwards the incident report to a Unit Disciplinary Committee (UDC) for an initial hearing. *Id*. ¶ 4. This hearing generally occurs within five working days after the incident report was issued. *Id*. The Warden must approve any delay if the incident report is not timely heard by the UDC. *Id*.

The UDC may: (1) find the inmate committed the prohibited act, and for certain disciplinary violations, sanction him; (2) find the inmate did not commit the prohibited act; or (3) refer the incident report to the DHO for further hearing. *Id*. If the UDC refers the incident report to the DHO, it advises the inmate of his rights at the DHO hearing, which include the right to make a statement, to present witnesses and documentary evidence, and to request a staff representative to assist him during the DHO hearing. *Id*. ¶¶ 4-5.

The DHO holds a hearing, and the inmate receives a written report of the final decision. *Id.* ¶ 5. The decision states the DHO's determination that the inmate did or did not commit the prohibited act or, alternatively, refers the incident report back for further investigation, review, and disposition. *Id*.

### III. BOP Administrative Remedy Procedure for Inmate Grievances

The BOP has a four-tiered administrative procedure for inmate grievances which is codified at 28 C.F.R. § 542.10 - 542.19. Bush Decl. ¶¶ 4-5, Docket No. 6. The first step is informal resolution with prison staff. A Request for Informal Resolution Forms (BP-8) is not assigned a Remedy ID number and is not tracked. *Id.* ¶ 6. If this step does not resolve the complaint, the inmate proceeds to the second step, which is to file a formal Request for Administrative Remedy (BP-9) at the institution where he is incarcerated. *Id.* If he is not satisfied with the Warden's response to his BP-9, the inmate may appeal to the

Regional Director by filing a Regional Office Administrative Remedy Appeal (BP-10) within 20 days of the date the Warden signed the response. *Id.* If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington, D.C. by filing a Central Office Administrative Remedy Appeal (BP-11). *Id.* The inmate may not raise an issue on appeal that he did not raise in a lower level filing. *Id.* This is the final administrative appeal. *Id.* ¶ 8.

## IV.    June 17, 2019 Cell Phone Incident (Report No. 3268659)

On June 17, 2019 the reporting officer at FPC-Duluth walked past Minhas's room and saw him sitting in his bunk with a black cell phone in his hand. Incident Report No. 3268659 at 1, Wilson Decl. Ex. H, Docket No. 5-8. When the officer walked into the room, Minhas put the cell phone behind him under a pillow to conceal it. *Id.* The officer asked Minhas to get out of the bunk and hand over the cell phone, which he did. *Id.* The phone was a black LG cell phone with an AT&T prepaid SIM card inside. *Id.* at 1, 3. The officer confiscated the items. *Id.* at 1. Minhas was charged with possessing a cellphone, which the BOP considers a hazardous tool. *Id.*; Wilson Decl. ¶ 23,[2] Docket No. 5. He received a copy of the incident report and was advised of his right to remain silent at all stages of the disciplinary process. Incident Rpt. No. 3268659 at 2, Wilson Decl. Ex. H, Docket No. 5-8.

---

[2] "The possession of a cellphone, charger, or USB cord is considered a hazardous tool in a correctional environment, as it can be used in an escape attempt or to serve as a means to introduce contraband, circumvent inmate phone monitoring, and pass on illicit information. Inmates who circumvent the phone monitoring by using a cellphone have been known to disrupt the safety and security of the institution, by arranging drug and contraband introductions, providing messages related to gang activity, and extorting money."

On June 20, 2019 the UDC conducted an initial hearing at which Minhas stated "[h]e was not using the phone. Hachey came and shook the room. Accepts phone was his." *Id.* at 1. The UDC referred the case to the DHO for further hearing, advised Minhas of his rights, and gave him the opportunity to request witnesses and a staff representative. *Id.* at 1-2; Wilson Decl. Ex. I (Inmate Rights at Discipline Hearing), Docket No. 5-9. Minhas did not request a staff representative and declined to call any witnesses. Wilson Decl. Ex. J (Notice of Discipline Hearing Before the DHO), Docket No. 5-10.

DHO Ingram held the DHO hearing on July 11, 2019 and issued a report on July 19, 2019. DHO Report, Docket No. 1-2 at 1-3. At the hearing Minhas stated, "I'm guilty of a phone under my pillow." *Id.* at 1-2. DHO Ingram found he had committed the Code 108 prohibited act of possessing a cell phone and sanctioned him with: (1) disallowance of 41 days good conduct time, (2) forfeiture of 30 days non-vested good conduct time, and (3) loss of 270 days of phone and email privileges. *Id.*

Minhas received a copy of the DHO Report on July 19, 2019. *Id.* at 3. The report advised him of his right to appeal the decision within 20 days under the Administrative Remedy Procedure. *Id.*

On September 20, 2019 Minhas appealed the sanctions to the BOP Regional Director's Office. Reg. Admin. Remedy Appeal, Docket No. 1-1 at 3. He argued the sanctions were "extremely harsh and severe" compared to other inmates with the same violation and discipline history and in particular to inmate R.H., and that the sanctions "[reek] of discrimination" because he is Asian and R.H. is African-American, as is DHO Ingram. *Id.*

On October 15, 2019[3] Regional Director J.E. Krueger denied Minhas's appeal. Docket No. 1-1 (Response to Reg. Admin. Remedy Appeal) at 2. He noted that the DHO imposes sanctions to address both the severity of the misconduct and to deter future misconduct, and that discipline is addressed on a case-by-case basis and thus he would not discuss other inmates' discipline when responding to Minhas's appeal. *Id.* The Regional Director also stated the sanctions were within the guidelines established in the policy and the discipline process was conducted in accordance with Program Statement 5270.09. *Id.* His written response also advised Minhas of his right to appeal to the BOP Office of General Counsel within 30 days. *Id.* Minhas did not do so.

Minhas filed this habeas petition on January 6, 2020. Respondent submitted a response, and Minhas filed a reply. However, his reply brief [Docket No. 8] completely fails to address the substance of his habeas petition relating to the sanctions resulting from the 2019 cell phone incident. Instead, he complains of other conduct by BOP officials in February 2020 that he contends violated other BOP policies, specifically, the confiscation of materials he left in the law library, rather than keeping them in the authorized legal storage box to be kept under his assigned bed, the loss of which he contends cost him hundreds of dollars. *See* Docket Nos. 8, 9. Minhas has not informed the Court that this event had any impact on his ability to support his habeas petition (it occurred after he filed his petition and exhibits, but before his reply brief was due). He has not asserted that there were additional documents he intended to submit but was

---

[3] Minhas's habeas petition ¶ 7(a)(5) identifies the date as "6-15-2019," apparently because the handwritten first number of the date by Krueger's signature resembles both a "6" and a "10." But it is clear from documents in the record that the response is dated October (not June) 15. The cell phone incident at issue occurred on June 17, 2019, so Krueger's denial of Minhas's appeal could not have happened two days before the incident itself.

6

unable to. He also did not request an extension of time to file his reply, nor has he otherwise communicated with the Court during the months following his reply brief. The Court therefore concludes Minhas submitted everything he intended to in support of his habeas petition.

## CONCLUSIONS OF LAW

Minhas raises two grounds for habeas relief: the disciplinary sanctions were excessive as compared to others, and in particular to R.H., due to discrimination against him by DHO Ingram because Minhas is Asian and DHO Ingram and R.H. are African-American (Ground One), and the BOP administrative procedure failed as a matter of law because he was not provided the allotted time to submit his appeal to the Regional Director (Ground Two). Pet. ¶ 13, Docket No. 1. Respondent opposes the petition, contending it should be dismissed because Minhas failed to exhaust his administrative remedies and, even if he had, his grounds for relief have no merit. The Court agrees.[4]

A federal prisoner generally must exhaust BOP administrative remedies before seeking habeas relief under 28 U.S.C. § 2241. However, the exhaustion prerequisite is judicially created, not jurisdictional. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).

In his habeas petition Minhas asserts that he appealed the Regional Director's denial to the Central Office on "October 21, 2019 and several thereafter," but had "not received a ruling of the BOP, so I chose to utilize the courts." Pet. ¶ 8, Docket No. 1. However, Minhas submitted no evidence that he ever filed a BP-11 "Central Office

---

[4] The Court finds it unnecessary to hold an evidentiary hearing. *See Wallace v. Lockhart*, 701 F.2d 719, 730 (8th Cir. 1983) (hearing not necessary "where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record"). The Court finds it would not be aided by a hearing on this petition.

7

Administrative Remedy Appeal" to the Director of National Inmate Appeals at the Office of the General Counsel. Minhas attached 20 pages of exhibits to his petition, *see* Docket Nos. 1-1, 1-2, 1-3, but they do not include any BP-11 appeal to the Central Office, or any Rejection Notice from the Central Office relating to any attempted but deficient BP-11 appeal, or any document that even purports to be an appeal of Krueger's October 15, 2019 decision to the Central Office.

Rather, the only document dated October 21, 2019 is a BP-10 Regional Administrative Remedy Appeal [Docket No. 1-2 at 5] that was rejected because it failed to identify which DHO Report was being appealed [Rejection Notice, Docket No. 1-2 at 4]. These two documents as well as several other BP-10 documents and Rejection Notices in the record appear to be attempts by Minhas to resurrect and re-appeal a 2018 cell phone incident that was documented in Incident Report No. 3182609 (Oct. 19, 2018) and was the subject of a DHO Report dated December 21, 2018.[5] *See* Docket No. 1-2 at 6-10, 12-14; Docket No. 1-3 at 2-3. The 2018 incident is not the subject of Minhas's habeas petition. *See* Pet. ¶¶ 6-7, 13, Docket No. 1.[6] Minhas did not exhaust his administrative appeals regarding the 2019 Incident Report No. 3268659.

Even if Minhas had properly exhausted his claims, the Court finds they fail on the merits. *See Lueth*, 498 F.3d at 797 n.3 (court has jurisdiction to address merits

---

[5] The record shows Minhas appealed the sanctions from the 2018 incident to the Regional Director, who denied his appeal on February 26, 2019. *See* Bush Decl. Ex. C, Docket No. 6-3.

[6] Although Respondent states the disciplinary actions in both the 2018 and 2019 incident reports are "at issue" here, *see* Resp. 4, Docket No. 4, in fact the 2018 incident report and DHO report are not identified in Minhas's habeas petition or his reply. He only refers to the 2019 incident and proceedings relating to it. *See* Pet. ¶¶ 6-7, 13, Docket No. 1. Although some documents regarding the 2018 incident are in the record, they are not the subject of Minhas's habeas action.

notwithstanding the failure to exhaust administrative remedies). A challenge to the revocation of good conduct time is property raised in a habeas petition. *Prieser v. Rodriguez*, 411 U.S. 475, 487 (1973). However, "federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985).

Deprivation of good conduct time, which may shorten a term of imprisonment, implicates a liberty interest that is protected by the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). Although not entitled to "the full panoply of rights due a defendant" in a criminal prosecution, *id.* at 555, an inmate subject to prison disciplinary proceedings must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). The disciplinary findings also must be supported by "some evidence in the record." *Id.*

Minhas does not claim he did not receive these procedural due process protections during the disciplinary proceedings, nor does he claim there was no evidence to support the determination that he committed the prohibited act of possessing the cell phone; in fact, he admitted to the conduct. Instead, Minhas claims the sanctions were "excessive" and that he was discriminated against because he is Asian. Pet. ¶ 13 (Ground One), Docket No. 1. The Court disagrees.

Minhas was sanctioned with the disallowance of 41 days good conduct time, the forfeiture of 30 days non-vested good conduct time, and the loss of 270 days of phone

9

and email privileges. Minhas does not dispute that these sanctions are within the scope of allowable sanctions for a Code 108 violation for possessing a cell phone, which is a "greatest severity" level prohibited act under Program Statement 5270.09. *See* Docket No. 5-1 at 45-46. The Court finds no basis to conclude the sanctions were "excessive" or were "arbitrary or unreasonable." *See Glouser v. Parratt,* 605 F.2d 419, 420-21 (8th Cir. 1979) (per curiam); *Hewlett v. Warden, FMC Rochester*, No. 18-cv-2293, 2019 WL 3557628, at *5 (D. Minn. Apr. 30, 2019), *report and recommendation adopted,* 2019 WL 3553411 (Aug. 5, 2019)*.*

Minhas argues the sanctions were discriminatory based on his Asian heritage because R.H. received lesser sanctions for a July 2019 cell phone incident, and both R.H. and DHO Ingram are African-American. *See* Docket No. 1-2 (partial DHO Report for R.H.) at 11. To the extent Minhas is claiming an equal protection violation, he must show he was treated differently than others who were similarly situated to him, and the reason for the less favorable treatment was discrimination due to his Asian heritage. *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir 1994); *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 815 (8th Cir. 2008) ("In order to establish [] an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'" (citation omitted)).

To support his discrimination claim, Minhas offers (1) the fact that DHO Ingram is African-American, and (2) one page of a DHO report showing R.H. was sanctioned with the loss of 41 days good conduct time, 180 days loss of email and phone privileges, and 60 days impoundment of personal property. *Id.* But this is insufficient to show unlawful discrimination.

10

First, the mere fact that DHO Ingram and R.H. are African-American is not evidence that her reason for determining Minhas's sanctions was discrimination based on his Asian heritage. Second, the fact that R.H. and Minhas did not receive identical sanctions for their 2019 Code 108 cell phone violations is not sufficient to establish they were similarly situated but treated differently for purposes of equal protection analysis.

Minhas asserts he and R.H. have "identical discipline history" [Pet. ¶ 13] but there is no support for that assertion in the record. BOP records show Minhas has been disciplined eight times, including the two cell phone violations in 2018 and 2019. Wilson Decl. ¶ 8 & Ex. C, Docket Nos. 5, 5-3. Minhas himself submitted records of his prior 2018 cell phone violation and sanctions. There is no evidence regarding prior discipline of R.H. But even if there were, the fact that R.H.'s sanctions were not identical and that R.H. is not Asian does not establish a constitutional violation, particularly in light of the fact that the sanctions for both Minhas and R.H. fall within the scope of allowable sanctions for a Code 108 violation.

Minhas has not provided evidence of a comparator class of Asian inmates (or non-African-American inmates) who were treated less favorably, or of African-American inmates who were treated more favorably, with respect to sanctions, nor has he offered other evidence of discrimination by DHO Ingram or the BOP based on race, ethnicity, or national origin in imposing sanctions. *See Ryan v. Scism*, 474 F.App'x 49, 53 n.4 (3d Cir. 2012) (per curiam) (rejecting African-American inmate's claim that two other inmates received lesser sanctions for the same prohibited act because they are Caucasian, finding his "sparse and conclusory allegations . . . fail to establish the purposeful discrimination necessary to make out an equal protection claim"). Accordingly, the Court finds the sanctions against Minhas did not violate his equal protection rights.

11

Minhas also argues that the BOP administrative remedy procedure failed as a matter of law because he was not given the allotted time to appeal to the Regional Director. Pet. ¶ 13 (Ground Two), Docket No. 1. The basis of his argument is an August 16, 2019 Rejection Notice of his attempted regional appeal, which also contains a received-by-the-Warden's Office date stamp of August 27, 2019. *See* Pet. Ex. A at 3, Docket No. 1-1 at 4. The Rejection Notice identifies several problems with his attempted appeal and directs him to refile within 10 days. *Id.* Minhas argues this document demonstrates that the appeal process is "clearly faulty" because he could not have refiled his appeal within 10 days of the August 16, 2019 notice if the Warden's Office did not receive the notice until 11 days later, on August 27, 2019. *See* Pet. ¶ 13, Docket No. 1.

But Minhas's argument fails because he was not in fact prevented from filing or refiling his regional appeal on the ground of untimeliness. The same exhibit cited by Minhas [Ex. A to his petition] also shows he successfully re-submitted his BP-10 regional appeal on September 20, 2019; the Regional Director received it on September 26, 2019; and the appeal was denied on October 15, 2019. *See* Docket No. 1-1 at 2-3. Accordingly, Ground Two of Minhas's petition states no basis for habeas relief.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that Rashid Minhas's habeas petition [Docket No. 1] be DENIED.

Dated: January 28, 2021        __s/David T. Schultz_____
    DAVID T. SCHULTZ
    U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).